# In the United States Court of Federal Claims

No. 12-175C
(Filed: October 23, 2014)

```
                                          )
JOHNATHAN DANIEL KING, et al.,            )
                                          )
              Plaintiffs,                 )        Keywords: Counterclaim; RCFC 15;
                                          )        undue delay; undue prejudice; FLSA;
v.                                        )        Administratively Uncontrolled
                                          )        Overtime; U.S. Customs and Border
THE UNITED STATES,                        )        Patrol
                                          )
              Defendant.                  )
                                          )
```

## ORDER ON MOTION TO RE-FILE COUNTERCLAIMS

Pending before the court is the motion of the United States ("defendant" or

"government") to re-file its counterclaims against the plaintiffs in this overtime pay case

under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-19 ("FLSA").[1]  The

government seeks to recoup from plaintiffs overtime pay they received as

Administratively Uncontrollable Overtime ("AUO").  Previously, the government had

contended that any recovery under the FLSA must be offset by the AUO paid to

---

[1] The government originally included the two counterclaims at issue in its May 1, 2014
Answer to Plaintiffs' Amended Complaint. The court granted the plaintiffs' motion to
strike the counterclaims on July 17, 2014 on the grounds that the counterclaims were
filed without an appropriate motion because the counterclaims were not included in
defendant's original Answer. See Order Granting Mot. to Strike Counterclaims, July 17,
2014, ECF No. 103. The government has now moved to re-file the counterclaims. Def.
Mot. to Amend, ECF No. 105; see also Pls.' Opp. to Mot. to Amend, ECF No. 109 ("Pls.'
Opp."); Def.'s Reply in Support of Mot. to Amend, ECF No. 110 ("Def.'s Reply").

plaintiffs, in order to prevent paying plaintiffs overtime twice for the same work.  The government now contends that the plaintiffs' AUO payments were improperly excessive, and in many cases exceed any potential recovery plaintiffs could claim under the FLSA. The government argues that it has met the requirements for amending its answer to add counterclaims under Rule 15 of the Rules of the United States Court of Federal Claims ("RCFC").

The plaintiffs argue that the government asserted the counterclaims in bad faith to retaliate against plaintiffs for filing an FLSA case.[2]  Plaintiffs also argue that there has been undue delay in bringing the counterclaims, which prejudices the plaintiffs, and that the government cannot provide any justification for bringing these claims at this stage of the litigation.  Finally, plaintiffs argue that allowing defendants to amend their answer to assert these counterclaims would be futile for failure to state a claim.

---

[2] The FLSA prohibits retaliation against employees who have instituted a proceeding under the FLSA.  29 U.S.C. § 215 ("it shall be unlawful . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . .").  Courts have recognized that "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their in terrorem effect."  Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (citations omitted); see also Beltran v. Brentwood N. Healthcare Ctr., LLC, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) ("We recognize that an employer's lawsuit filed with a retaliatory motive rather than in good faith may constitute an adverse action and provide a basis for a retaliation claim."). However, an employer will not be barred from asserting a counterclaim in an FLSA case on the grounds that the counterclaim is retaliatory "unless the suit lacks a reasonable basis in fact or law."  Spellman v. Am. Eagle Express, Inc., 680 F. Supp. 2d 188, 191 (D.D.C. 2010) (quoting Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 748 (1983)).

For the reasons that follow, the government's motion to re-file the counterclaims is **DENIED** as unfairly prejudicial to the plaintiffs.[3]  Allowing the government to amend its answer and inject these claims into the litigation would fundamentally alter the nature of the case at this late date.  Previously, the government had merely sought an offset on the grounds that plaintiffs were barred from collecting overtime payments for AUO and under the FLSA.  Under the government's new theory, regardless of whether this court finds that plaintiffs are entitled to back pay under the FLSA, plaintiffs could potentially be individually liable for tens of thousands of dollars.  Discovery is now closed and cross-motions for summary judgment are pending.  If the court were to allow the government's counterclaims, more discovery and additional briefing would be required, postponing resolution of this case.  Further, the government has not provided a satisfactory justification for the delay.  The government admits in its moving papers that it was aware of a possible claim regarding AUO for nearly a year but elected not to file its counterclaims until expert discovery had closed, fact discovery was to close within days, and summary judgment motions were scheduled to be filed.  Taken together, these factors support a finding of prejudice.

## I.    FACTS

In this collective action case, 228 Supervisory Border Patrol Agents who served as instructors at U.S. Customs and Border Protection ("CBP") Academies allege that CBP failed to pay overtime compensation due to them under the FLSA.  Throughout the

---

[3] Because the court finds that allowing the defendant to assert counterclaims would be unfairly prejudicial, it need not address plaintiffs other arguments.

course of this litigation, the government has discussed the possibility that AUO could offset any FLSA recovery because under the applicable statutes and regulations, plaintiffs are not entitled to recover both AUO and overtime under the FLSA for the same work. See generally 5 U.S.C. §§ 5541-5550b.  The original complaint was filed in this case on March 16, 2012.  In its May 17, 2012 answer, the government "aver[ed] that part or all of plaintiffs' claims may be barred by, or must be offset by, payment for administratively uncontrollable overtime (AUO)."  Ans. ¶ 24, ECF No. 9.  In the parties' June 29, 2012 Joint Preliminary Status Report ("JPSR"), the government stated that one of the issues to be decided, assuming the court found that plaintiffs were non-exempt under the FLSA, any compensation, was whether recovery under the FLSA "must be offset, in part or in whole, by amounts equal to other premium pay they have received, such as for administratively uncontrollable overtime . . . ." JPSR 3, ECF No. 13.

In the summer of 2013, the government became aware of certain CBP policies that the government claims resulted in overpayment of AUO to plaintiffs and other similarly situated employees.  Simply put, the government asserts that the CBP had improperly included excludable days (such as holidays, leave days, and certain other assignments where AUO was not paid) when calculating employees' average weekly AUO hours. Because an employee's average weekly AUO hours are used to determine the rate at which AUO is paid, the inclusion of excludable days would increase the amount of AUO paid to the employee beyond the allowable amount.  See Def.'s Mot. to Amend 8-11. CBP's AUO calculation policy remains in place, though according to defendant, CBP is

currently in the process of revising the policy. <u>See</u> App. to Def.'s Cross-Mot. for Summ. J. 305, ECF No. 97-1.

In an August 2013 status report, the government took the position that not only could alleged AUO overpayments exceed any potential recovery under the FLSA, but also that the government was entitled to recover excess AUO paid to plaintiffs whether or not the plaintiffs are qualified to recover under the FLSA. The government explained that

> it appears to defendant that <u>the Government may be entitled to recover</u>, or at least to credit as an offset, roughly five percent of plaintiffs' basic pay per pay period. In the aggregate, and depending upon which pay periods such an offset were applied to, it appears to defendant that an AUO offset may drastically reduce, if not eliminate, the FLSA compensation plaintiffs' seek.

Def.'s Status Report 3, Aug. 27, 2013, ECF No. 61. (emphasis added). The amount the government estimated it was entitled to recover was significant, amounting to "roughly five percent of plaintiffs' basic pay per period." <u>Id.</u> In a report dated March 31, 2014, defendant's expert calculated that the sum of AUO overpayments generally exceeded the alleged FLSA underpayments. <u>See</u> App. to Def.'s Cross-Mot. for Summ. J. 163.

On May 5, 2014, four days before the scheduled close of discovery, the government filed its answer to the amended complaint, which included two counterclaims against plaintiffs. Answer to Am. Compl., ECF No. 84.[4] The government argued that it was entitled to recover AUO overpayments from Pay Period 1 of 2008 through Pay

---

[4] On May 9, 2014, this court extended the discovery deadline from May 9 to June 11 so that the plaintiffs could seek discovery relating to the purported counterclaims, and extended the deadline for plaintiffs' motion for summary judgment from May 16 to May 31. <u>See</u> Scheduling Order, May 9, 2014, ECF No. 86.

Period 13 of 2014.  Id.  ¶¶ 31-33.  The government attached an exhibit listing the alleged

AUO overpayments for each plaintiff, ranging from $344 to $32,660 with most plaintiffs

alleged to owe between $15,000 and $25,000.  Id. Ex. A.  The plaintiffs moved to strike

the counterclaims on the grounds that they were filed without an appropriate motion

because the counterclaims were not included in defendant's original answer.  In a July 17,

2014 order, this court agreed and dismissed the counterclaims.  See Order Granting Mot.

to Strike, July 17, 2014, ECF No. 103.  Defendant moved to refile its counterclaims on

July 31, 2014.  See Def.'s Mot. to Amend.

## II.    DISCUSSION

### A.    Standard of Review

Although RCFC 15 directs courts to "freely give leave [to amend] when justice so

requires," leave is not granted automatically and is subject to several limitations.  See

RCFC 15(2)(b).  Specifically, the court may deny leave to amend an answer to allow for

counterclaims where the amendment is (1) sought in bad faith; (2) would produce undue

delay in the litigation; (3) would cause the opposing party undue prejudice; or (4) would

be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). Though these factors are

sometimes addressed separately, the Federal Circuit has found that prejudice is "the

'touchstone of the inquiry under rule 15(a).'"  Pressure Products Med. Supplies, Inc. v.

Greatbatch Ltd., 599 F.3d 1308, 1320 (Fed. Cir. 2010) (quoting Lone Star Ladies Invest.

Club v. Schlotzsky's Inc., 238 F.3d 363, 368 (5th Cir. 2001)).  Several factors can

evidence undue prejudice, including undue delay in filing the amendment and the degree

to which the amendment would alter the course of the litigation.  A finding that an

amendment would be prejudicial is reviewed under an abuse of discretion standard. <u>See</u>

<u>Zenith Radio Corp. v. Hazeltine Research, Inc.,</u> 401 U.S. 321, 330 (1971).

> **B.     The Government's Delay in Filing its Counterclaims was Undue and Unjustified**

The plaintiffs argue that the government should have filed these counterclaims, if

at all, when this lawsuit was filed in 2012.  The policy under which plaintiffs have been

receiving allegedly excessive AUO has been in place since 1997, and applies to all

Border Patrol employees.  Therefore, the government cannot justify its delay in filing its

counterclaims.  The government asserts that, though it was aware of a potential claim

against plaintiffs for AUO overpayment in the summer of 2013, the government "had not

performed the calculations necessary to determine whether plaintiffs actually owed the

government money," Def.'s Mot. to Amend 14, until the close of expert discovery in

March 2014.

"Although delay itself is an insufficient ground to deny amendment, if the delay is

'undue' the district court may refuse to permit amendment." <u>Datascope Corp. v. SMEC,</u>

<u>Inc.,</u> 962 F.2d 1043, 1045 (Fed. Cir. 1992) (quoting <u>Forman</u>, 371 U.S. at 182).  In order

to support a finding of prejudice, "the delay must be <u>undue</u>, i.e., it must prejudice the

nonmoving party or impose unwarranted burdens on the court." <u>Mayeaux v. La. Health</u>

<u>Servs. & Indem. Co.</u>, 376 F.3d 420, 427 (5th Cir. 2004).  In <u>Mayeaux</u>, the court noted

that while the party's "motion for leave to amend was not 'untimely' in the sense of being

filed outside the deadline prescribed in the preliminary pretrial conference order," the

motion "was certainly 'untimely' in light of the procedural history and posture of the

case." Id.  Therefore, the timeliness of the amendment is not decided in an absolute

sense, but in light of the particular facts and history of the case.  Specifically, courts

consider the stage of the litigation together with the length of time that the moving party

was aware of the underlying facts,

      "The classic situation in which courts deny leave to amend is when a party files

its motion for leave after discovery has been completed or when the nonmoving party has

filed for summary judgment."  In re Ameritech Corp., 188 F.R.D. 280, 283 (N.D. Ill.

1999) (citing Cresswell v. Sullivan Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)); see also

Schwartz & Schwartz of Virginia, LLC v. Certain Underwriters at Lloyd's, London who

Subscribed to Policy No. NC959, 677 F. Supp. 2d 890, 899 (W.D. Va. 2009) ("Courts

have routinely recognized that allowing an amendment after the close of discovery

contributes to a finding of prejudice to the non-moving party." (citations omitted)).

However, an amendment filed late in the litigation is not automatically prejudicial.  In

Laber v. Harvey, the Fourth Circuit explained that even after ruling against the non-

moving party in a motion for summary judgment, "a district court may not deny such a

motion simply because" the motion was filed late in the litigation.  438 F.3d 404, 427

(4th Cir. 2006).  Still, the court in that case went on to note that "[a] moment's reflection

reveals" that the further a case has progressed before the amendment is filed, "the more

likely it is that the amendment will prejudice the [non-moving party] . . . ."  Id.

      Next, the court considers the length of time that moving party was aware of the

underlying facts before moving to amend.  "Where the party seeking an untimely

amendment knows or should have known of the facts upon which the proposed

amendment is based, but fails to assert them in a timely fashion, the amendment will be denied." In re Ameritech Corp., 188 F.R.D. at 284 (N.D. Ill. 1999) (citing Johnson v. Methodist Medical Center of Illinois, 10 F.3d 1300, 1304 (7th Cir. 1993)). There is no strict limit on the amount of time that a party may be aware of a potential claim before filing a motion to amend; like the other factors evidencing prejudice, awareness of a potential claim must be assessed in the context of the case as a whole. Anaheim Gardens v. United States, 93-cv-655, 2011 WL 4090899 (Fed. Cl. Sept. 14, 2011) (citing 6 Charles Alan Wright et al., Fed. Practice & Procedure § 1488 (3d ed. 2010)).

Here, defendant filed its amended answer asserting counterclaims for the first time in May 2014. Discovery was scheduled to close within days, and briefing on summary judgment had been scheduled. Though it is unclear precisely when defendant determined that plaintiffs were being overpaid AUO, it was certainly aware that calculation of plaintiffs AUO would be an issue in this case from the very beginning of the litigation in 2012. See Answer ¶ 24. The government stated that it became aware of the alleged overpayments in the summer of 2013 when performing calculations relating to settlement negotiations. See Def.'s Mot. to Amend 14; Def.'s Status Report 3. However, the government did not move to amend its answer until May of 2014—two years after the case had been filed and after the parties had all but completed discovery and a schedule for summary judgment had been set.

The government's argument that it had not performed the calculations necessary to determine the amounts plaintiffs owed is unconvincing. The CBP's allegedly excessive AUO payment policies were applied to all CBP Border Patrol employees, so if any of the

plaintiffs had been overpaid, all of them would have been overpaid.  Exact calculations would not have been necessary to assert the counterclaims; it would have been sufficient that the government had knowledge that the Border Patrol was performing its own calculations in an allegedly improper manner.  Even if the government believed that exact calculations were necessary, it does not explain why the calculations were not performed until March of 2014, see Def.'s Mot. to Amend 15, more than six months after the government became aware of the issue.

### C.    Allowing the Government's Counterclaims Would Fundamentally Change the Litigation and Require Additional Discovery

Defendant argues that the plaintiffs will not be prejudiced because the court will have to take into account AUO payment when deciding if plaintiffs can recover under the FLSA regardless of whether the government is allowed to assert its counterclaims.  The government also argues that plaintiffs were on notice that the government believed that plaintiffs were overpaid AUO and that the government could seek to recover that overtime.  In addition, the government asserts between the time the government originally filed its counterclaims in May of 2014 and the time discovery  closed in June of 2014, plaintiffs could—and in fact did—seek discovery relating to the counterclaims.

The plaintiffs argue that the prejudice to them is more substantial than merely calculating AUO.   The plaintiffs have asserted that they would seek to amend their complaint to add a count of retaliation under the FLSA, and would then require additional discovery regarding any decision(s) to apply any new CBP AUO policies retroactively to plaintiffs or other employees, thus necessitating additional discovery.

If allowing a motion to amend a pleading would fundamentally alter the nature of the case and consequently impose additional discovery requirements on the non-moving party, that fact, though not determinative, would support a finding of prejudice. Pressure Products, 599 F.3d at 1320 (citing Mayeaux, 376 F.3d at 427).  As the Mayeaux court explained:

> [The court] must determine whether the proposed amendment (1) was merely proposing alternative legal theories for recovery on the same underlying facts or (2) would fundamentally alter the nature of the case. Amendments that fall into the former category generally should be permitted, as they advance Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities. Amendments that fall into the latter category, however, may be denied if the circumstances warrant.

Mayeaux, 376 F.3d at 427 (footnote omitted).  Another case found prejudice when the plaintiff attempted to add a claim of fraud to a case that had previously been limited to a determination of whether a law firm had a conflict of interest.  In re Am. Int'l Refinery, Inc., 676 F.3d 455, 467 (5th Cir. 2012).  The court found that the newly added claims "would have dramatically altered the subject matter of the suit at a late juncture" and would have necessitated substantial additional discovery and litigation.  Id.; see also Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U., 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013) (finding that "when, after a period of extensive discovery, a party proposes a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require discovery in addition to the administrative record, the amendment may be appropriately denied as prejudicial to the opposing party.").

The counterclaims the government is now seeking to assert go far beyond an alternative legal theory.  Previously, this case focused on whether 1) plaintiffs had a basis

of recovery for overtime under the FSLA; and 2) if so, whether plaintiffs' recovery had to be offset, in part or in whole, because they had already been paid another form of overtime during the same time period.  These claims transform the case from one in which plaintiffs' recovery could be offset because they had already been paid to a case where the plaintiffs could individually be liable for tens of thousands of dollars for collecting AUO under their employer's still-existing policy.[5]

In addition, allowing the government's claim for recovery to go forward would be a much more involved process than simply allowing the government to argue that any FLSA recovery is to be offset by AUO payments during the same time period.  The government's claim for AUO overpayments run from Pay Period 13 of 2008 to Pay Period 14 in 2014—a much greater time period than the plaintiffs' FLSA claims.[6]

---

[5] The plaintiffs note that "the considerations involved in initiating an FLSA action against the government would have been far different had the plaintiffs known that the government planned to sock them—and only them—with a retroactive policy change that would cost them millions of dollars," and argue that plaintiffs would have taken action to prevent "financial hemorrhaging" had they known that they were accruing compensation that the government would eventually attempt to recover. Pls.' Opp. 5.  The government counters that the plaintiffs had not changed their behavior since they were put on notice of the potential counterclaims.  However, as the government acknowledges, there is nothing plaintiffs could have done differently under the CBP's existing AUO policy. See Def.'s. Reply 6.  While the argument that plaintiffs would have conducted themselves differently is not strictly relevant the question of unfair prejudice in conducting this litigation, the fact that they will still accrue allegedly excessive AUO until the CBP changes its policy is cause for some concern.   Cf. Fresno, 980 F. Supp. 2d at 1178 (citing Hewlett-Packard, 809 F. Supp. 2d at 1121) (noting that courts have "been particularly critical of proposed amendments that appear to 'game' the system.").

[6] The parties disagree over the precise time period plaintiffs can recover FLSA overtime. Plaintiffs were reclassified as non-exempt effective January of 2012, and were paid FLSA overtime from that point forward.  Pls.'s Stmt. of Facts ¶ 2.  Plaintiffs argue that a that a three year statute of limitations applies because the FLSA violation was willful, see

Allowing the government to bring its counterclaim now "would require dramatically expanding discovery on the eve of summary judgment." <u>Hewlett-Packard</u>, 809 F. Supp. 2d at 1121.

The government argues that "[j]ustice [r]equires" that it be able to now bring these counterclaims. Def.'s Mot. to Amend 5.  If the government wishes to bring a claim for AUO overpayments against plaintiffs and/or other Border Patrol employees, it may do so in another case.  <u>See</u> <u>Sanofi-Aventis v. Apotex Inc.</u>, 659 F.3d 1171, 1183 (Fed. Cir. 2011) (finding denial of leave to amend to assert counterclaims did not prejudice defendant when defendant was able to bring the same claims in state court). Therefore, the court now finds that plaintiffs have met their burden of establishing prejudice.

## CONCLUSION

For all above stated, the government's request to re-file its counterclaims is **DENIED.**

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

Pls.'s Mot. for Summ. J. 28-29, while defendant asserts that the applicable statute of limitations is two years, <u>see</u> Def's. Cross Mot. for Summ. J. 10.