# In the United States Court of Federal Claims

No. 12-175
(Filed:  December 23, 2014)

<table>
<tr><td>

KING, et al.,

                Plaintiffs,

v.

THE UNITED STATES,

                Defendant.

</td><td>

**Cross-Motion for Summary Judgment; Fair Labor Standards Act; Learned Professional Exemption; Teacher Exemption; United States Customs and Border Protection; Course Developer/Instructor**

</td></tr>
</table>

*Raymond C. Fay*, Washington, DC, for plaintiff.  *Heidi Burakiewicz* and *Karla Gilbride*, Washington, DC, of counsel.

*Daniel B. Volk*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, and *Robert E. Kirschman, Jr.*, Director, Department of Justice, Commercial Litigation Branch, for defendant.  *Lindsay K. Solensky* and *Megan Z. Snyder*, United Stated Department of Homeland Security, United States Customs and Border Protection, Washington, DC, of counsel.

## OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FIRESTONE**, *Judge*.

Pending before the court are the parties' cross-motions for summary judgment,

filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims

("RCFC").[1]  The plaintiffs, current and former employees of United States Customs and

---

[1] See Plaintiffs' Motion for Summary Judgment, ECF No. 90 ("Pls.' Mot."); Defendant's Response in Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment, ECF No. 97 ("Def.'s Mot."); Plaintiffs' Reply in Support of Plaintiffs'

Border Protection ("CBP" or "the agency"), brought this suit under the Fair Labor

Standards Act ("FLSA") of 1938 <u>as amended</u>, 28 U.S.C. § 201-19, to recover unpaid

overtime wages, liquidated damages, costs, and attorneys' fees.  Plaintiffs also ask this

court for declaratory and injunctive relief.  After careful review of the entire record of

this case, the court now **DENIES** plaintiffs' motion for summary judgment in its entirety

and **GRANTS IN PART** and **FINDS MOOT IN PART** defendant's cross-motion for

summary judgment.[2]

Plaintiffs are or were employed as Course Developer/Instructors ("CDIs") at CBP

Academies.  In January of 2012, CBP's Office of Human Resources changed plaintiffs'

official FLSA designation from exempt to non-exempt and began paying overtime to

---

Motion for Summary Judgment and Response in Opposition to Defendant's Motion for
Summary Judgment, ECF No. 104 ("Pls.' Reply"); and Defendant's Reply in Support of
Defendant's Cross Motion for Summary Judgment, ECF No. 108 ("Def.'s Reply").

[2] Defendant had moved to amend its answer to include a counterclaim alleging that CBP has
been overpaying plaintiffs another form of overtime, specifically, Administratively Uncontrolled
Overtime ("AUO").  As this court explained in its order denying defendant's motion to amend:

> Simply put, the government asserts that the CBP had improperly included
> excludable days (such as holidays, leave days, and certain other assignments
> where AUO was not paid) when calculating employees' average weekly AUO
> hours.   Because an employee's average weekly AUO hours are used to determine
> the rate at which AUO is paid, the inclusion of excludable days would increase
> the amount of AUO paid to the employee beyond the allowable amount. . . .

Order Denying Mot. to Am. Answer 5, ECF No. 111 ("Order").  According to the government,
these overpayments more than exceed any amount of overtime potentially owed to plaintiffs
under the FLSA.  The government sought to recover these alleged overpayments, or in the
alternative, to credit AUO paid to plaintiffs against any recovery they receive in this action.  <u>See</u>
Def.'s Mot. to Am. Answer, ECF No. 94.   Defendant's motion for summary judgment,
submitted before its motion to amend was decided, asks this court to grant summary judgment on
the purported counterclaim.  On October 23, 2014, this court denied defendant's motion on the
grounds that to allow the counterclaim to proceed at this late stage of the litigation would
unfairly prejudice the plaintiffs, <u>see</u> Order, mooting the section of defendant's motion for
summary judgment addressing the purported counterclaim.

plaintiffs as under the FLSA.  Plaintiffs' employment duties remained the same before and after the re-classification.  In this lawsuit, filed on March 16, 2012, plaintiffs argue that their pre-2012 classification as FLSA-exempt was incorrect.   As a result of the allegedly incorrect designation, plaintiffs charge that CBP is liable under the FLSA for overtime work plaintiffs performed prior to January 2012.[3]   In addition to seeking back pay for logged overtime hours, sixteen plaintiffs also seek auxiliary damages for time they spent training and caring for agency dogs while off duty.

The plaintiffs' primary argument is that CBP's 2012 decision to change their position from exempt to non-exempt, with no corresponding change in work duties, is dispositive on the question of liability.   Because, in plaintiffs' view, the defendant is estopped from arguing that the pre-2012 exempt classification was correct, plaintiffs assert that they did not need to present any evidence to challenge the government's evidence regarding plaintiffs' employment activity, including the testimony of witnesses who stated that day-to-day plaintiffs worked primarily as teachers when they were employed at the CBP academies during the time period at issue.

The Department of Justice, litigating this case on behalf of the defendant United States ("defendant" or "government"), cross-moved for summary judgment, arguing that

---

[3] The parties disagree about the length of time for which plaintiffs could recover FLSA overtime, assuming that the court finds that CBP should have treated them as FLSA non-exempt prior to 2012.  Defendant argues that assuming the plaintiffs can recover at all, the applicable statute of limitations is two years, which is the default statute of limitation under the FLSA.  Plaintiffs contend that the three-year statute of limitations applies because the FLSA violation in this case was willful.  Because the court has found that plaintiffs were properly classified as FLSA-exempt prior to January of 2012, it need not address the statute of limitations question.

CBP was justified in treating plaintiffs as FLSA-exempt during the relevant time period because plaintiffs are teachers and thus fall under the "learned professional" exemption to the FLSA's overtime provisions.   The government takes the position that the agency's decision to reclassify plaintiffs in 2012 is not strictly relevant to the question before the court.  Instead, the government contends that court must decide whether the agency was justified in classifying CDIs as non-exempt before January of 2012.  The government further argues that CBP's determination that plaintiffs would be treated as non-exempt after January 2012 does not prevent the government from arguing that they were properly classified as non-exempt before 2012.

With respect to the merits of plaintiffs' FLSA case, defendant argues that plaintiffs' pre-2012 classification as FLSA-exempt was correct under applicable Office of Personal Management (OPM) regulations.  Specifically, defendant argues that plaintiffs are teachers as defined by the regulations and therefore fall under the "learned professional" exemption in the FLSA.[4]  As discussed below, OPM's regulations list teachers, defined as "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed," 5 C.F.R. § 551.208(h), as a type of learned professional.  Therefore, defendant argues, plaintiffs are not entitled to recover unpaid overtime.

_____

[4] OPM defines a "learned professional" as any employee whose "primary duty [is] the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  5 C.F.R. § 551.208(a).

This court agrees with the government that CBP's decision to re-classify plaintiffs as non-exempt in 2012 is not controlling on the court.  Rather, the burden is on the government to establish that the CBP was legally justified in not paying overtime to plaintiffs as FLSA-exempt employees prior to 2012.  If the government meets its burden, the government does not owe back pay to plaintiffs for overtime prior to 2012.  Turning to the merits of the case, the court finds that that the government has met its burden of establishing that plaintiffs were teachers, and thus exempt from the FLSA's overtime provisions under the learned professional exemption, for the time period in question. [5]  Consequently, CBP does not owe back pay to the plaintiffs.

## I.    FACTS

The following facts are taken from the parties' cross-motions for summary judgment, statements of material facts, and accompanying exhibits.  The following facts are undisputed. [6]

---

[5] In deciding that plaintiffs are not owed overtime for work performed before 2012, the court expresses no opinion as to whether CBP is justified in continuing to pay FLSA overtime to CDIs for work performed after their reclassification.

[6] During oral argument, plaintiffs' counsel suggested that the official job descriptions in this and similar documents did not accurately reflect plaintiffs' day-to-day duties, at least with respect to the percentage of time spent on each of the enumerated Major Duties and Responsibilities. However, plaintiffs never provided any evidence to contradict the government's account of plaintiffs' work, nor did they challenge the veracity of defendant's account in any other way. See RCFC 56(c)(1)(A).  Therefore, the court will consider the government's description of plaintiffs' job (as supported by the evidence appended to its briefs) undisputed for the purpose of this motion.  See RCFC 56(e)(1) (court may consider a fact undisputed if the opposing party fails to address another party's assertion of fact).

A.     The Nature of Plaintiffs' Work

The plaintiffs are current and former senior instructors and course developers, known as CDIs, at CBP Academies including the Federal Law Enforcement Training Center in Artesia, New Mexico; the Canine Center in Harpers Ferry, West Virginia; the Advanced Training Center in El Paso, Texas; and other locations.   See Pls.' Am. Compl. ¶ 1, ECF No. 81; Def.'s Mot. 4.  All newly-hired CBP agents are required to complete the basic training program at the Border Patrol Academy in Artesia, New Mexico.  See Def.'s Mot. A66, Dep. of Clark Messer.

The official Position Description cited by both parties explains that CDIs supervise and give instruction to other Border Patrol agents, including "journeyman, senior journeyman, supervisory and managerial level personnel." See  Pls.' Mot., Ex. Q at 2; Def.'s Mot., A310-14.  A 2009 CPB document describing the requirements for Academy instructors confirms that CDIs "are responsible for meeting or exceeding academy benchmarks and providing top quality instruction."  Def.'s Mot. A30.  In addition, CDIs supervise other agents who have been detailed as instructors from their positions in the field.  Def.'s Mot. A311. (explaining that CDIs are the "first line supervisor" and "lead instructor or training session coordinator" for "GS-9 and GS-11 detailed border patrol agent instructors").

CDIs are required to give specialized instruction in a wide variety of areas, including administrative law; law relating to detention, arrest, search, and seizure; Spanish-language grammar and conversation; firearms training; specialized driving; counter-terrorism operations and investigative techniques; computer usage; various

aspects of employment law; and various government programs relating to drug use and immigration.  See id.  Though each CDI is not assigned to teach every class, every CDI must be "thoroughly familiar with the vast majority of other subject matter courses taught by other divisions to provide a consistency for courses developed, ensure objective overall student evaluation, and effectively make recommendations for improvement of the academy curriculum."  Id.  CDIs are also required to "impart agency policy, authority, organization and function" through their instruction.  Id.

A CDI's major duties and responsibilities are divided into four categories: Course Planning and Development (20%); Evaluating and Updating Curriculum (30%); Professorial and Technical Expert Duties (20%); and Supervisory Duties/Session Coordination (30%).  Id. at A311-14.  CDIs must be proficient in Spanish language and are "cross-trained in the subject matter of more than one academy department because [CDIs] are subject to temporary or permanent departmental reassignment."  Id. at A314. In order to qualify as a Canine Instructor, a CDI must also be "certified as an Instructor of Canine Law Enforcement from an accredited or approved institution or agency" and must "be able to testify in court as an expert witness on the complexities of canine psychology and training methods."   Id. at A335.

CDIs are classified as a subtype of Supervisory Border Patrol Agents ("SBPAs"). However, there are significant differences between SBPAs who are employed as CDIs at Academies and other SBPAs assigned to supervisory activities in the field.  Clark Messer, the Assistant Chief Patrol Agent at the Academy in Artesia and Acting Director,

Operations Division, Office of Training and Development ("OTD"), explained the key

differences between the work of a field SBPA and a CDI at a Border Patrol Academy:

> Generally, the first-line supervisors [field SBPAs] are in the field . . .
> observing the work being done by the non-supervisory agents.  They are
> issuing equipment, things of that nature, actually hands-on supervision of
> the employees doing their work.
>
> . . .
>
> At the Border Patrol Academy, . . . the work is . . . different outside of the
> same administrative things that are common to, you know, all supervision.
> At the Border Patrol Academy and—and other training academies that we
> have, a CDI would supervise not only their students—it could be basic or
> advanced students.  They would supervise . . . detailed instructors that come
> in from the field
>
> . . .
>
> In addition to supervising those employees, [CDIs] would be responsible
> for the instruction for that class.  They would be responsible for making
> sure that the—the class has the supplies, equipment, et cetera that are
> necessary, providing examinations, practical examinations, things like that.
>
> . . .

Def.'s Mot. A75.  Mr. Messer's testimony demonstrates that the primary difference

between CDIs and field SBPAs is that CDIs are engaged in classroom activities and

teaching in addition to the managerial duties incumbent to all SBPAs.

Finally, the evidence establishes that CDIs did receive Administratively

Uncontrolled Overtime ("AUO") during the period in question.  See Pls.' Mot., Ex. H.

The rate of AUO payment ranges from 10% of base pay for 3-5 average weekly AUO

hours to 25% for 9 or more average weekly AUO hours.  See 5 C.F.R. § 550.1543(a).

According to the plaintiffs, a typical two-week pay period "can easily involve more than

100 hours of work."  Pls.' Mot. 2.[7]

---

[7] As noted in footnote 2, the government contended in this litigation that plaintiffs' AUO
exceeded the amount they would have received for FLSA overtime.

8

**B.     The Agency's Decision to Reclassify CDIs as Non-Exempt**

The parties agree that a CDI's job description and requirements have not changed in any meaningful way during any time period relevant to the litigation.  See Pls.' Mot. 3; Def.'s Mot. 10.  However, in January of 2012, the classification branch of CBP changed the plaintiffs' FLSA status from exempt to non-exempt.  The change in classification came as a result of a perceived disparity in the classification status between SBPAs classified as CDIs and stationed at academies (including the plaintiffs) and SBPAs stationed in the field.  Pls.' Mot., Ex. D at 1.  According to a July 20, 2011 CBP-OTD memorandum, SBPAs working as first-line supervisors in the field were "upgraded from GS-12 to GS-13" in August of 2010.  Id.  GS-13 SBPAs in the field continued to be classified as non-exempt after the change in pay grade.  Id.   However, SBPAs assigned as CDIs to a CBP academy remained classified as GS-13, but were FLSA-exempt.  Id.

The difference in FLSA status between GS-13 SBPAs employed as CDIs and GS-13 SBPAs employed in the field had a negative effect on the Border Patrol Academy's ability to recruit and retain CDIs.  Id. at 2.  According to the evidence, the difference in FLSA status meant that CDIs could earn "$7,000 to $10,000 more" per year in overtime by transferring back into the field.  Id.  The evidence further established that as of July 2011, twenty-one out of forty-one CDIs "have chosen to rotate back into the field since" the SBPAs were upgraded to GS-13 while keeping their FLSA non-exempt status.  Id. at 2-3.  In addition, "many CDIs have received SBPA [field ] positions through vacancy announcements."  Id. at 3.  The OTD memorandum noted that as a result of CDIs leaving

Border Patrol Academies, "[i]nstitutional knowledge and experience at the [Academies] is affected and adversely affects the quality of training."  Id.

Aldena Copeland, Director of Position Management and Classification for CBP, was the head of the committee that handled the CDIs' re-classification.  In her deposition, Ms. Copeland stated that the perceived inconsistency between the FLSA treatment of CDIs at academies and SBPAs in the field triggered the agency's review of CDIs' FLSA-exempt classification.  Def.'s Mot. A101.  Ms. Copeland testified that she and her staff used the OPM guidelines to determine whether a position met an exemption under the FLSA.  Id. at A98, A102.  In her testimony, Ms. Copeland did not discuss her analysis with respect to the specific requirements enumerated in the OPM guidelines with regard to FLSA exemptions. There is nothing in her testimony to suggest that she considered the "learned professional" or teacher exemptions described in 5 C.F.R. § 551.208(h) when she made her decision.

In addition, the record is not clear as to CBP's reasoning for classifying CDIs as FLSA non-exempt prior to 2012.  However, the July 2011 OTD memorandum indicates that FLSA status "was determined by [GS] grade."  Pls.' Mot., Ex. D at 1.  The classification committee's decision to change CDIs' classification status from FLSA-exempt to non-exempt was unanimous, and went into effect on January 29, 2012.  Pls.' Mot., Ex. C at 60. Since that date, CDIs have been paid overtime pursuant to the FLSA.

On March 16, 2012, plaintiffs filed the present lawsuit seeking back pay for overtime worked prior to January 2012, when CDIs were classified as FLSA-exempt.

## II.     STANDARD OF REVIEW

Under RCFC 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  Moreover, "an asserted issue of material fact is not 'genuine' in the sense of . . . Rule 56 if a reasonable [trier of fact] could only resolve the question for the moving party."  Vehicular Technologies Corp. v. Titan Wheel Intern., Inc., 212 F.3d 1377, 1381 (Fed. Cir. 2000).  "[T]o determine whether a 'reasonable [trier of fact]' could disagree on [an issue of material fact], this court identifies facts posing a potential dispute and then examines those facts in the context of the legal criteria by which a fact finder would resolve the dispute."  Id.

## III.    THE FAIR LABOR STANDARDS ACT

The FLSA "established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek."  Integrity Staffing Solutions, Inc. v. Busk, No. 13-433, slip op. at 3 (U.S. Dec. 9, 2014); see 29 U.S.C. § 207(a)(1). Employers who violate the FLSA's requirements may "be held civilly liable for backpay, liquidated damages, and attorney's fees."  Integrity Staffing Solutions, No. 13-433, slip op. at 3.  In 1974, Congress amended the FLSA to extend the overtime provisions to

employees of the federal government.  See 29 U.S.C. § 203(e)(2)(A).  The 1974

amendments gave the OPM authority to implement the FLSA with respect to federal

employees.  Abbey v. United States, 745 F.3d 1363, 1373 (Fed. Cir. 2014).

Relevant to this case, certain employees are exempt from the overtime provisions

of the FLSA.  The overtime provisions of the FLSA do not apply to "any employee

employed in a bona fide executive, administrative, or professional capacity (including

any employee employed in the capacity of academic administrative personnel or teacher

in elementary or secondary schools) . . . ."  29 U.S.C. § 213(a).  An employer defending

against an FLSA suit seeking unpaid overtime may raise an exemption as an affirmative

defense, and the employer has the burden of proving by clear and convincing evidence

that the employee meets the criteria for an exemption.  See Astor v. United States, 79

Fed. Cl. 303, 308 (2007) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196-97

(1974)); see also Berg v. Newman, 982 F.2d 500, 503 (Fed. Cir. 1992); Shockley v.

Newport News, 997 F.2d 18, 21 (4th Cir. 1993).   Exemption criteria must be "narrowly

construed to apply only to those employees who are clearly within the terms and the spirit

of the exemption."  Astor, 79 Fed. Cl. at 305 (quoting 5 C.F.R. § 551.202(b)).  Whether

or not an employee's duty falls under an exemption to the FLSA is a question of law,

while the nature of the employee's duties is a question of fact.  Icicle Seafoods, Inc. v.

Worthington, 475 U.S. 709, 714 (1986).

Pursuant to its rulemaking authority, OPM has issued regulations implementing

the FLSA as applied to federal employees, and has elaborated on the exemptions

provided for in the FLSA.  See 29 U.S.C. § 204(f) (authorizing the Director of OPM "to

administer the provisions of [the FLSA] with respect to any individual employed by the United States," subject to certain exceptions not relevant here).[8]  The OPM regulations define a number of categories of employees exempt from the FLSA's overtime requirements.  These categories including the learned professional exemption, see 5 C.F.R. § 551.208, the executive exemption, see id. at § 551.205, and the administrative exemption, see id. at § 551.206.  If an employee's "primary duty" meets the criteria for an exemption, that employee is exempt.  See Astor v. United States, 79 Fed. Cl. 303, 311 (2007).  A "primary duty" is one that "constitutes the major part (over 50 percent) of an employee's work."  Id. at § 551.104.  However,

> A duty that constitutes less than 50 percent of an employee's work (alternative primary duty) may be credited as the primary duty for exemption purposes provided that duty:
>
> (1) Constitutes a substantial, regular part of the work assigned and performed;
>
> (2) Is the reason for the existence of the position; and
>
> (3) Is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment as discussed in [the administrative exception], and the significance of the decisions made.

Id.  The regulations explain that though "separate criteria are provided for the exemption of executive, administrative, and professional employees, those categories are not mutually exclusive."  Id. at § 551.202(f).  Therefore, a position may be exempt if the

---

[8] The Federal Circuit has found that valid OPM regulations "govern the application of the Fair Labor Standards Act to" federal employees.  Billings v. United States, 322 F.3d 1328, 1331 (Fed. Cir. 2003); see also Adams v. United States, 350 F.3d 1216, 1221 (Fed. Cir. 2003) (citing 29 U.S.C. § 204(f)) (noting that "[f]or most federal employees—including the Border Patrol—the FLSA's executive exemption is interpreted by the [OPM]").

employee performs a combination of exempted duties, "provided the work as a whole clearly meets the other exemption criteria." 5 C.F.R. § 551.202(h).

## IV.   DISCUSSION

### A.   The Government is Not Precluded from Arguing that Plaintiffs were Properly Treated As FLSA-Exempt Prior to January 2012

The plaintiffs' argument in support of summary judgment on the question of liability hinges on the CBP's 2012 decision to change plaintiffs' FLSA status from exempt to non-exempt.  According to the plaintiffs, if a CDI's job description was the same before and after the change in classification, and if the position is now classified as FLSA non-exempt, then the positions must have also been non-exempt before 2012. Plaintiffs argue that the agency's decision to re-classify plaintiffs as non-exempt in 2012 "is an admission of liability here."  Pls.' Mot. 9.  Specifically, plaintiffs assert that the defendant—and, by extension, the court—is bound Ms. Copeland's testimony in her capacity as a RCFC 30(b)(6) witness that the 2012 re-classification decision was correct. The plaintiffs assert that they "could have supplied reams of testimony and documentary proof regarding their actual day-to-day responsibilities to support their non-exempt status."  Pls.' Reply 2.  However, in the plaintiffs' view, Ms. Copeland's testimony "absolved the parties of [the] extensive evidentiary burden by relying on the agency's position descriptions for her testimony."  Id. at 3.

The government counters that the plaintiffs' reliance on Ms. Copeland's testimony to support summary judgment is misplaced for two reasons.  First, the government argues that a party is not bound by a  RCFC 30(b)(6) witness's conclusions of law.  Second, the

government contends that the CBP's conclusions of law are not binding on the court because the court has an independent obligation to apply the law to the facts.

The court agrees with the government that Ms. Copeland's testimony is not dispositive on the question of whether plaintiffs are FLSA non-exempt as a matter of law. We begin with a review of RCFC 30(b)(6), which allows a party, including a governmental agency, to name a deponent to testify on the entity's behalf. The party seeking to depose the entity must "describe with reasonable particularity the matters for examination." RCFC 30(b)(6). The entity must then designate a person or persons "to testify on its behalf." Id. As a general matter, the designated deponent's testimony regarding the noticed topics is binding on the entity. See, e.g., Zip-O-Log Mills, Inc. v. United States, 113 Fed. Cl. 24, 32 (2013) (noting that that "testimony of a Rule 30(b)(6) witness is binding on the Government."). But see A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001) (noting that "testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes" (quoting Indus. Hard Chrome, Ltd. v. Hetran, Inc., 92 F.Supp. 2d 786, 791 (N.D. Ill. 2000))). However, if the opposing party asks a 30(b)(6) witness questions that are outside the scope of the topics in the deposition notice, the entity will not be bound by the deponent's answers to those questions. EEOC v. Freeman, 288 F.R.D. 92, 99 (D. Md. 2012) (citing Falchenberg v. N.Y. State Dept. of Educ., 642 F.Supp. 2d 156, 164 (S.D.N.Y. 2008)); see also EEOC v. Caesars Entm't, Inc., 237 F.R.D. 428, 433 (D. Nev. 2006); Detoy v. City of San Francisco, 196 F.R.D. 362, 367 (N.D. Cal. 2000) (finding that "deponent's answers to questions outside the

scope of the notice will not bind the organization, and the organization cannot be penalized if the deponent does not know the answer.")

In this case, the government designated Ms. Copeland to address one of the topics listed in plaintiffs' 30(b)(6) notice, namely, "Why the CBP decided to change plaintiffs' designation to FLSA non-exempt in January of 2012." Pls.' Mot., Ex. B at 2. Ms. Copeland has been the Director of Position Management and Classification in Human Resources for the CBP since 2011. She is responsible for management of the position classification office, which includes establishing position descriptions and FLSA classifications, for the approximately 60,000 CBP employees. Pls.' Mot, Ex. C at 20-21. In that capacity, Ms. Copeland testified that the OTD had brought to her attention that there was a potential inconsistency in the FLSA classification of SBPAs serving as CDIs and SBPAs serving as field agent supervisors. See Pls.' Mot., Ex. C at 55-56. Ms. Copeland testified, over the defendant's objection, that she was confident that non-exempt was the correct classification for CDIs:

> [Plaintiffs' Counsel:] At some point, did you, in your own mind, reach your conclusion that the classification should be changed from exempt to non-exempt for the CDIs?
> [Ms. Copeland:] Yes.
> . . .
> [Plaintiffs' Counsel:] Under the FLSA, it is the correct classification. True?
> [Defendant's Counsel:] Objection. Calls for a legal conclusion. Exceeds the scope. You may answer as best you can.
> . . .
> [Plaintiffs' Counsel:] Under the FLSA, in your opinion, the nonexempt is the correct classification?
> [Ms. Copeland:] Yes.

Def.'s Mot. A102.

As the government points out, Ms. Copeland was only designated to testify on its behalf with respect to a limited question of fact, specifically: "Why the CBP decided to change plaintiffs' designation to FLSA non-exempt in January of 2012." Therefore, Ms. Copeland's testimony as to the correctness of plaintiffs' FLSA legal status was outside the scope of her designation and not binding on the government. See, e.g., Detoy, 196 F.R.D. at 367. The government has not challenged Ms. Copeland's version of the events which led the CBP to reexamine the CDIs' classification, including the fact that the review was triggered by a perceived discrepancy in the pay of field SBPAs and CDIs, Def.'s Mot. A101, which was causing retention problems at Academies. The government is not, however, bound by Ms. Copeland's opinion as to whether the re-classification was legally justified under the FLSA or whether CDIs were properly classified as FLSA-exempt before 2012. These issues were plainly outside the scope of Ms. Copeland's deposition notice and amount to legal conclusions.

It is for these reasons that plaintiffs reliance on Zip-O-Log for the proposition that "testimony of a Rule 30(b)(6) witness is binding on the Government," Pls.' Mot. 9, is misplaced. In that case, the relevant admission was a factual issue within the scope of the deponent's designated topics. Zip-O-Log, 113 Fed. Cl. at 32. In contrast, plaintiffs here ask the court to bind the government to a legal conclusion outside of the purview of the witness's 30(b)(6) designation. In addition, as the government notes, legal conclusions given during a 30(b)(6) deposition are generally not binding on the deponent entity. See AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 n.9 (3d Cir. 2009).

Moreover, plaintiffs' contention that Ms. Copeland's testimony is dispositive on the issue of FLSA liability improperly assumes that her testimony also "absolve[s]" the court from independently resolving the legal question of whether the CBP wrongly classified plaintiffs as exempt prior to 2012.  Regardless of Ms. Copeland's testimony, the court is obligated to apply OPM's regulations to the facts of this case.  See Billings, 322 F.3d at 1331 (valid OPM regulations "govern the application of the [FLSA] to" federal employees).  Therefore, if CBP's classification conflicts with the applicable regulations, the regulations are controlling.  See Kirschbaum v. Walling, 316 U.S. 517, 523 (1942) (unlike other APA proceedings that involve an administrative record, the "[FLSA] puts upon the courts the independent responsibility of applying ad hoc the general terms of the statute to an infinite variety of complicated industrial situations." ).

## B.   The Government has Established with Undisputed Facts that CDIs were Properly Classified as FLSA-Exempt Prior to 2012

The court now turns to the legal question of whether CDIs were properly treated as FLSA-exempt prior to January of 2012.  The government argues that plaintiffs are FLSA-exempt because they are teachers, and thus fall within the OPM's learned professional" exemption.  The government further argues that CDI duties that are not covered by the learned professional exemption are covered by the executive exemption and the administrative exemption.  See 5 C.F.R. § 551.202(f) ("Although separate criteria are provided for the exemption of executive, administrative, and professional employees, those categories are not mutually exclusive.  Employees who perform a combination of exempt duties set forth in this regulation may also qualify for exemption.").  The

government relies on extensive and uncontested documentary evidence and testimony to make its case.  Based on its review of that undisputed evidence, the court finds that defendant has met its burden of showing that plaintiffs were FLSA-exempt prior to 2012 under the learned professional exemption because plaintiffs' primary duties were imparting advanced knowledge at an educational institute.  5 C.F.R. § 551.208(h).[9]  As such, plaintiffs are not entitled to unpaid overtime for the period at issue in this case.

### 1. CDIs were FLSA-Exempt under the Learned Professional Exemption for the Period at Issue in this Litigation

The OPM regulation defining the "learned professional" exemption explains that "[t]o qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  5 C.F.R. § 551.208(a).  The work must include the following three elements:

> (1) The employee must perform work requiring advanced knowledge.
> Work requiring advanced knowledge is predominantly intellectual in
> character and includes work requiring the consistent exercise of discretion
> and judgment, as distinguished from performance of routine mental,
> manual, mechanical or physical work.  An employee who performs work
> requiring advanced knowledge generally uses the advanced knowledge to
> analyze, interpret or make deductions from varying facts or circumstances.
> Advanced knowledge cannot be attained at the high school level;
>
> (2) The advanced knowledge must be in a field of science or learning which
> includes the traditional professions of law, medicine, theology, accounting,
> actuarial computation, engineering, architecture, teaching, various types of
> physical, chemical and biological sciences, pharmacy, and other similar
> occupations that have a recognized professional status as distinguished
> from the mechanical arts or skilled trades where in some instances the

---

[9] Because the court has found that CDIs were properly classified as exempt based on the learned professional the court does not address defendant's arguments that CDIs also could qualify as non-exempt under the administrative or executive exemptions of the FLSA.

knowledge is of a fairly advanced type, but is not in a field of science or learning; and

(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction which restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. . . .

Id.  The regulation goes on to explicitly state that teachers qualify as learned

professionals, stating, in relevant part:

 A teacher is any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed.

(1) A teacher performs exempt work when serving, for example, as a regular academic teacher; teacher of kindergarten or nursery school pupils; teacher of gifted or disabled children; teacher of skilled and semi-skilled trades and occupations; teacher engaged in automobile driving instruction; aircraft flight instructor; home economics teacher; or vocal or instrumental music instructor.  . . .  An instructor in an institution of higher education or another educational establishment whose primary duty is teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge is also an exempt teacher.

(2) The possession of an elementary or secondary teacher's certificate provides a clear means of identifying the individuals contemplated as being within the scope of the exemption for teaching professionals. . . . However, a teacher's certificate is not generally necessary for post-secondary educational establishments.

(3) Exempt teachers do not include teachers of skilled and semi-skilled trade, craft, and laboring occupations when the paramount knowledge is the knowledge of and the ability to perform the trade, craft, or laboring occupation.  Conversely, if the primary requirement of the post-secondary education instructor is the ability to instruct, as opposed to knowledge of and ability to perform a trade, craft, or laboring occupation, then the position may be exempt.

5 C.F.R. § 551.208(h).  The regulations also note that "[t]he areas in which the

professional exemption may be applicable are expanding. . . .  When an advanced

specialized degree has become a standard requirement for a particular occupation, that

occupation may have acquired the characteristics of a learned profession." 5 C.F.R. §
551.208(b).

Applying these criteria to the day-to-day work of CDIs during the period in
question, it is clear that they meet the learned professional exemption and the definition
of teacher under the regulation.  First, 20 percent of a CDI's job deals with course
planning and development.  In this connection, a CDI must, among other things:

> -Participate[] in the planning and development of the Service's overall
> training curriculum, providing expertise in the courses offered. . . .
> -Prepare[] courses and materials for training programs.  Preparation
> involves planning, researching, determining course scope and emphases,
> identifying objectives, and determining instructional media; subsequently,
> developing and writing lesson plans, student texts, instructor texts,
> instructional aids, and other related training material.
> . . .
> -Define[] specific training objectives for all courses and ensures the transfer
> of objectives into specific technical skills, concepts, and facts to be taught.

Def.'s Mot. A311-12.  CDIs must also be able to "[a]djust[] daily course plans and
content to meet the need of class participants."  Id. at A312.  These activities demonstrate
that a CDI "uses the advanced knowledge to analyze, interpret or make deductions from
varying facts or circumstances."  5 C.F.R. § 551.208(a)(1).

Second, in order to perform their work, CDIs are required to possess the type of
"advanced knowledge" that distinguishes a learned professional.  See 5 C.F.R. §
551.208(a)(1).  The course material CDIs are responsible for evaluating and updating
"covers a wide range of law enforcement activities and subjects, ranging from basic to
highly complex, and frequently encompassing rapidly changing or newly emerging topics
(i.e., legal issues, policies, technologies, and methods), and changing world conditions."

Def.'s Mot. A311-12.   According to the undisputed evidence, CDIs spend 30 percent of

their time on evaluating and updating the curriculum.   Id. at 311Further, CDIs spend an

additional 20 percent of their work on Course Planning and Development.   Def.'s Mot.

A311.   The subjects CDIs teach include those in a "field of science or learning" such as

administrative law; employment law; law relating to detention, arrest, search, and seizure;

Spanish-language grammar and conversation; and various government programs relating

law enforcement and counter-terrorism.   See id.; 5 C.F.R. § 551.208(a)(2).

A CDI must also be "thoroughly familiar with the vast majority of other subject

matter courses taught by other divisions to provide a consistency for courses developed . .

. and effectively make recommendations for improvement of the academy curriculum."

Id.   Clearly, the type of advanced knowledge a CDI requires is "acquired by a prolonged

course of specialized intellectual instruction."   See 5 C.F.R. § 551.208(a)(3).   The

prerequisites for becoming a CDI are rigorous.   The Border Patrol Academy requires all

CDIs to be "certified in an Academy-approved instructor training program."   Def.'s Mot.

A28.   In that connection, Professorial and Technical Expert Duties make up an additional

20 percent of plaintiffs' responsibilities.   Id. at A311.   As Mr. Messer explained in his

deposition, CDIs are "responsible for the instruction for [their] class."   Id. at A75.   A

CDI is "responsible for the overall administration of a training session" and "[d]irects,

controls, and evaluates practical exercises."   Id. at A313.   CDIs also "[c]onduct[] training

for subordinate instructors" and "[p]rovide[] specific counseling to students when

needed." Id.[10]  Taken together, 70 percent of a CDI's position is spent on course

responsibilities, exceeding the regulations' requirement that a "primary duty" must

comprise at least 50 percent of an employee's job in order to qualify under an exemption.

See 5 C.F.R. § 551.104.

Given these facts, the government is able to successfully distinguish this case from

Astor, one of the few cases examining the learned professional exemption as applied to

teachers.  In Astor, the court found that plaintiffs employed as firearms instructors were

not teachers because they spent very little time creating and reviewing lesson plans,

conducted little or no research for the courses they taught, and did not assign grades or

write report cards or other evaluations.  See Astor, 79 Fed. Cl. at 312-314.  In that case,

the court found that "imparting of knowledge was not their 'primary duty.'"  Id. at 314.

In addition, plaintiffs' institution did not issue any degree license, certification, or

educational credits.  Id. at 317.

A CDI's duties and responsibilities are substantially different. Unlike the plaintiffs

in Astor, who taught only a narrow skill set pursuant to a curriculum they did not devise,

a CDI's work "requir[es] advanced knowledge" and "the consistent exercise of discretion

and judgment."  29 C.F.R. § 551.208(a)(1).  The plaintiffs in Astor spent only one to

three percent of their time updating and developing lesson plans.  Astor, 79 Fed. Cl. at

313.  In contrast, CDIs spend 20 percent of their time on course planning and

development.  Def.'s Mot. A311-12.  The plaintiffs in Astor primarily provided firearms

---

[10] In oral argument, counsel for the plaintiff acknowledged that the "overwhelming portion of [CDIs'] duty was giving instruction."  Oral Argument Recording, Nov. 18, 2014.

instruction on a firing range, which the court found was instruction of "skilled and semi-skilled trade" and thus classified as non-exempt activity.  Astor, 79 Fed. Cl. at 315 (quoting 29 C.F.R. § 551.208(h)(3)).  CDIs, in comparison, are charged with providing instruction of the same nature as the examples enumerated in the regulation.  In fact, one of the plaintiffs' subjects—automobile driving instruction—is explicitly listed as a type of exempt instruction.  See 5 C.F.R. § 551.208(h).  While the plaintiffs in Astor did not grade or evaluate students in a meaningful way, CDIs are required to "[e]stablish and recommend standards" for student evaluations, and must also conduct examinations and make evaluations of students' overall performance.  Def.'s Mot. A311, A312.

Finally, the court finds that the CBP academies are "educational establishment[s]" as defined in 5 C.F.R. § 551.208(h) (requiring exempt teacher to be employed at an "educational establishment").   OPM defines an educational establishment as "a nursery school, an elementary or secondary school system, an institution of higher education, other educational institutions, and in certain circumstances, training facilities."  5 C.F.R. § 551.104.  In the Comments section to the proposed regulation, OPM explained that it chose not to explicitly state the circumstances under which a "training facility" qualified as an educational establishment because:

> Training facilities vary widely within the Federal sector and are found in a number of different settings.  These settings range from Department of Defense-operated primary and secondary schools and military technical training schools, to law enforcement training centers and adult training facilities operated by a variety of Federal agencies.  Because of this wide variability in facilities, we do not believe further detailed discussion will add materially to a better understanding of the term.

72 Fed. Reg. 52,753, 52,754.  In Astor, the court found that the Federal Law Enforcement

Training Center ("FLETC") where plaintiffs were employed was not an "educational

establishment" for the purposes of the regulations because the only qualifications for

instructors is law enforcement and firearms experience and the completion of a two-week

introductory course.  Astor, 79 Fed. Cl. at 317.   In contrast, CDIs are required to undergo

extensive training and certification before becoming instructors.  Def.'s Mot A28-30.

Regardless of whether the Astor court's conclusion that FLETC is not an educational

establishment is correct, the court finds that the Border Patrol Academies are the type of

training facilities envisioned by the regulation.  The Academies provide a full curriculum

of subjects and require agents to be trained in Spanish language; law and policy; and a

variety of operations tactics.  As discussed above, the type of instruction provided at the

Academies is academically rigorous and covers a broad variety of complex subjects.  In

that way, the Border Patrol Academies more closely resemble more traditional

educational institutions.

### 2.    Plaintiffs' Other Arguments In Support of Overtime Pay Are Rejected

Plaintiffs assert that CDIs should be non-exempt under the FLSA because

regardless of their job duties, CDIs were "in a job classification with a position

description that was the same as other supervisory border patrol agents who were

nonexempt already."  Pls.' Mot. 3. The government counters that the other SBPAs'

position descriptions were not the same as CDIs', an assertion supported by the

uncontroverted evidence in this case.  The July 2011 Office of Training and Development

memorandum discussing the CDIs' proposed FLSA re-classification states that the

Border Patrol Academy "maintains that the same basic duties occur in both position descriptions [CDIs and SBPAs] (scheduling, performing management and evaluations, approving leave and other fundamental supervisory duties)."   Pls.' Mot., Ex. D at 2. However, unlike field SBPAs, CDIs have additional responsibilities specifically related to imparting knowledge and teaching.  Ms. Copeland testified that though field SBPAs sometimes moved into positions at academies as CDIs and vice versa, CDIs and SBPAs in the field "weren't in the same job." Id. at A101, A105.  As discussed above, Mr. Messer, who oversees the CBP Academies, explained that field SBPAs are "issuing equipment, things of that nature, actually hands-on supervision of the employees doing their work," whereas at the Border Patrol Academy, the work is . . . different outside of the same administrative things that are common to, you know, all supervision."  Def.'s Mot. A75.  Mr. Messer explained that in addition to their supervisory duties, CDIs "would be responsible for the instruction for [their assigned] class," a task that included making sure that "the class has the supplies, equipment, et cetera that are necessary, providing examinations, practical examinations, things like that. . . ." Id.  The fact that a CDI would likely have the skill set required to perform the responsibilities of a field SBPA does not mean that the agency is required to treat CDIs as FLSA-exempt when CDIs' primary duty is teaching.

The plaintiffs also argue that the government cannot rely on the learned professional exemption because CBP could not provide any documentation explaining the reasoning behind its original decision to classify CDIs as exempt.  See Pls. Mot. 27-

28.[11]  Plaintiffs are correct there is no evidence to show that anyone at CBP applied the factors described in the learned professional exemption to plaintiffs' job description. However, under the FLSA, the court is not reviewing the reasonableness of an agency's decision making process, but instead is charged with applying the law and valid regulations to the facts.  See Kirschbaum, 316 U.S. at 523.  Other cases have found that employees are not automatically re-classified as FLSA non-exempt when the regulation defining their exemption was found to be invalid, because the courts have an independent responsibility to evaluate the law separate and apart from any agency determination.  See Abbott v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (finding that employees are not automatically FLSA non-exempt because the agency classified them based subsequently-invalidated regulations); Abundis v. United States, 18 Cl. Ct. 657, 663 (1989) (employees could still be FLSA-exempt despite the fact that they were originally categorized based on invalid OPM regulations that based FLSA status on pay grade); Ackerman v. United States, 21 Cl. Ct. 484, 489 (1990).

In view of the foregoing, plaintiffs have not identified any legal basis for finding CDIs were non-exempt based on actions of the CBP. The government is therefore entitled to summary judgment with regard to establishing that plaintiffs were FLSA-exempt employees for the period at issue in this case.

---

[11] Plaintiffs make this argument in the portion of their brief arguing that CBP's violation of the FLSA was willful, and therefore a three-year statute of limitations applies.  The court construes plaintiffs' argument to apply to the underlying question of liability as well as the question of whether the supposed violation was willful.

## C. Plaintiffs Cannot Recover for Home Canine Care

A subset of plaintiffs, employed at canine academies, are also seeking overtime payment for time they spent caring for CBP canines during off-duty hours. Pls.' Mot. 14-15. According to the plaintiffs, the CIDs' supervisors instructed them not to record hours spent caring for dogs outside of on-duty hours for the purposes of calculating AUO overtime, and refused to accept any timesheets that included off-duty care. The claims relating to canine care were not explicitly stated in the original complaint plaintiffs filed in 2012. On April 9, 2014, this court granted plaintiffs' motion to amend their complaint to "clarify that the work duties for which overtime compensation is sought includes canine care." Order Granting Pls.' Mot. for Leave to 1st Am. Compl. 1, ECF No. 86.

The government argues that even if plaintiffs could recover under the FLSA, the claims relating to canine care are barred by the statute of limitations.[12] The government argues that these claims are distinct from plaintiffs' other claims under the FLSA and therefore do not relate back to the original complaint for statutes of limitations purposes. Plaintiffs argue that these claims are no different than their other FLSA claims (i.e., that plaintiffs were not paid time-and-a-half for overtime hours). In the alternative, plaintiffs argue that the claims relate back to the original complaint because they arise from the same transaction or occurrence. Pls.' Reply at 15-16.

The plaintiffs have argued for only one theory of recovery—the overtime provisions of the FLSA. See Am. Compl. ¶ 19-21 (alleging only violation of the FLSA

---

[12] The statute of limitations is two years, or three years for knowing violations. The parties disagree as to which statute applies.

as the only count);  Pls.' Mot. 14 (asserting that plaintiffs' "fundamental claim was, and remains" that plaintiffs "worked overtime for which they should have been compensated for under the FLSA.").Although off-duty time caring for canines is compensable under the FLSA as a general matter,[13] the plaintiffs in this case are FLSA-exempt and therefore cannot recover overtime under the FLSA.[14]  As such the government is entitled to summary judgment with regard to plaintiffs' claim for overtime pay for canine care.

## V.    CONCLUSION

For the reasons stated above, this court **DENIES** plaintiffs' motion for summary judgment in its entirety.  The court and **GRANTS IN PART** and **FINDS IN PART AS MOOT** defendant's cross-motion for summary judgment.  The clerk is directed to enter judgment in this case.  Each party is to bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

[13]  See Bull v. United States, 479 F.3d 1365, 1379 (Fed. Cir. 2007) (FLSA overtime required for time spent off-duty constructing training aids for dogs).

[14] The plaintiffs who are claiming compensation for canine care have a substantially similar job description as the other plaintiffs.  Compare Def.'s Mot. A330-35 with id. at A336-40.